UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

GERALD P. SMITH, JR. and
ANGELA SMITH,

        Plaintiffs,

v.

BLUE RIBBON TRANSPORT,
MICHAEL DAVID RODERICK,
and FRANCIS J. CAITO, INC. d/b/a
F.J. CAITO TRANSPORTATION,
jointly and severally,

        Defendants.
_____/

Case No. 1:06-CV-234

Hon. Richard Alan Enslen

**OPINION**

      Plaintiffs Gerald P. Smith, Jr. and Angela Smith have moved to strike an affirmative defense asserted by Defendants Blue Ribbon Transport and Michael David Roderick. Defendants have opposed such relief. Oral argument is unnecessary in light of the briefing received. *See* W.D. Mich. L. Civ. R. 7.2(d).

**BACKGROUND**

      Plaintiffs filed this diversity suit in 2006 seeking damages against Defendants for an automobile accident on the M-60 highway occurring on June 6, 2005 in which Defendant Roderick turned his vehicle into the side of Plaintiffs' vehicle while Plaintiffs had the right of way. (Compl. ¶¶ 5-9.) Defendants have filed an Answer and Affirmative Defenses denying liability. (Answer, Dkt. No. 5.) Defendants' second affirmative defense claims that the driving conditions and more particularly blinding sunlight constitute an affirmative defense excusing Defendants from liability. (*Id.* at 5-6.)

Since the assertion of that defense, Plaintiffs have moved to strike the affirmative defense as contrary to state law. The parties' briefing concurs to the extent that their arguments each assume Michigan law controls this controversy, but disagree as to the interpretation of Michigan law.

**LEGAL STANDARDS**

Federal Rule of Civil Procedure 12(f) provides, in pertinent part, that upon the motion of a party, or upon the court's own initiative, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike affirmative defenses under Rule 12(f) are left to the court's discretion, although they are generally disfavored. *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953); *Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439, 1442 (W.D. Mich. 1989); *Ameriwood Indus. Int'l Corp. v. Arthur,* 961 F. Supp. 1078, 1083 (W.D. Mich. 1997).

In assessing such motions, the Court utilizes the common law demurrer procedure under which the truth of the challenged pleading is assumed, though not its legal conclusions. *See Brown,* 201 F.2d at 821-22. An affirmative defense is insufficient "if, as a matter of law, the defense cannot succeed under any circumstances," and a motion to strike is appropriate "where it will eliminate spurious issues before trial and streamline the litigation." *Ameriwood,* 961 F. Supp. at 1083; *Kelley,* 714 F. Supp. at 1442.

**LEGAL ANALYSIS**

To begin, the Court repeats the usual standards applicable to determination of state law by the federal courts in diversity suit. When a federal court sits in diversity jurisdiction, it must apply the substantive law of the state whose law governs the dispute. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938); *Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 433 (6th Cir. 2004). If the pertinent state

supreme court has spoken on the issue, its decision must be followed; if it has not, then decisions of the state's intermediate appellate courts should be followed absent a strong showing that the state supreme court would have ruled differently. *Lawler v. Fireman's Fund Ins. Co.,* 322 F.3d 900, 903 (6th Cir. 2003).

The parties concur that Michigan substantive law controls this automobile accident within Michigan's borders. They do not agree upon whether under Michigan law, as a matter of law, bright sunlight which blinds a driver may be asserted as an affirmative defense to negligence liability premised on violation of the traffic laws.

Addressing that question, the Court begins with the case of *Vander Laan v. Miedema*, 188 N.W.2d 564, 567 (Mich. 1971). In *Vander Laan*, the Michigan Supreme Court described the conditions under which statutory negligence may be excused due to a "sudden emergency." The Michigan Supreme Court said:

> Under the rear-end collision statute a rebuttable presumption arises that the offending driver is prima facie guilty of negligence. . . .
>
> However, as we have previously indicated the assured-clear-distance statute must be 'reasonably construed.' . . . . As such, it is not applicable under all circumstances where it might otherwise be literally employed. Instead, it is subject to "qualification by the test of due or ordinary care, exercised in the light of the 'attending conditions.' " . . . .
>
> One such instance, where this statute is inapplicable, arises when a collision is shown to have occurred as the result of a sudden emergency not of the defendants' own making. *McKinney v. Anderson, Supra*. Defendants urge us to apply that rule here. But, as far as our disposition of the present case is concerned, it must be recognized from a logical as well as from a legal point of view, that for the emergency doctrine to apply an 'emergency' within the meaning of that rule must have existed. . . . .
>
> To come within the purview of this rule the circumstances attending the accident must present a situation that is 'unusual or unsuspected.' . . . .
>
> The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist. Such an event is typically

3

> associated with a phenomenon of nature. A classical example of the 'unusual' predicament envisioned by the emergency doctrine is provided by *Patzer v. Bowerman-Halifax Funeral Home, Supra*, wherein the accident occurred amid an Upper Peninsula blizzard.
>
> 'Unsuspected' on the other hand connotes a potential peril within the everyday movement of traffic. To come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected. A good example of this can be seen in *McKinney v. Anderson, Supra*, where defendant rear-ended a plaintiff's car which had stopped while pushing a disabled vehicle on the highway. Coming over the crest of a hill, defendant first saw plaintiff's taillights when he was 400 feet away. However, defendant did not clearly see the peril of plaintiff's stopping until he was about 100-200 feet away, at which point it was too late to avoid a collision under the circumstances. Furthermore, the failure of the plaintiff to signal that he was stopping, coupled with the surrounding darkness, made the subsequent peril totally unexpected to the defendant.

*Id.* (citations omitted).

Given those parameters, is a drive into sunlight amidst traffic the kind of "unusual" condition that can support the application of the sudden and unexpected emergency doctrine? Defendants' answer to this question is framed by the pre-*Vander Laan* case law, including the cases of *Houck v. Snyder*, 188 N.W.2d 564 (Mich. 1971), *Earley v. Sutherby*, 67 N.W.2d 174 (1954) and *Patt v. Dilley*, 263 N.W. 749 (Mich. 1935). Each of those cases involve a driver blinded by the headlights of another vehicle during evening or nighttime hours as opposed to ordinary daylight conditions. Thus, while such cases might support an application of the emergency doctrine to drivers blinded by headlights, they do not support an application of the rule to drivers blinded by daylight

Only a single Michigan case is cited on the issue of whether blinding daylight may warrant application of the sudden emergency doctrine–the case of *Woiknoris v. Woirol*, 245 N.W.2d 579, 582 (Mich. Ct. App. 1976). In that case, the Michigan Court of Appeals determined that the giving of a sudden emergency instruction based on testimony of blinding daylight was error, but harmless error in light of the jury's determinations. Although its reasoning in rejecting the defense as to daylight

blindness is properly regarded as *dicta*, it is persuasive *dicta* given the absence of controlling Michigan authorities to support a conclusion that daylight blindness may constitute a sudden emergency. Indeed, a later unpublished decision of the Michigan Court of Appeals, *Fellows v. Snoeyink*, 1999 WL 33433532, *1 (Mich. Ct. App. 1999), held that ordinary daytime driving conditions will not support an application of the sudden emergency doctrine even when the accident was precipitated by a third vehicle parked illegally in the roadway. This predilection of Michigan law is not new, but rather has been a feature of Michigan law since Nineteenth Century cases involving railway accidents. *See Battishill v. Humphreys*, 38 N.W. 581 (Mich. 1887) (holding that failure of engineer to keep a clear lookout during daylight conditions at street crossing would result in liability even if the child in the street was unseen by defendants) (cited with approval in *Zeni v. Anderson*, 243 N.W.2d 270, 288 (Mich. 1976)).

So to the question of whether blinding daylight may constitute a "sudden emergency" excusing liability under Michigan law, the Court answers with a resounding, No! A sudden blizzard or a wounded bull in the roadway may be a surprise. Light from the star that the Earth circles 365 days a year assuredly is not.

## **CONCLUSION**

An Order shall enter striking the second Affirmative Defense of Defendants.


Dated in Kalamazoo, MI:        /s/Richard Alan Enslen
March 19, 2007                 Richard Alan Enslen
                               Senior United States District Judge